IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JUANA S. FLORES,

                    Plaintiff,

          vs.

TYSON FOODS, INC.,

                    Defendant.

4:12CV3089

MEMORANDUM AND ORDER

This matter is before the court on defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56, Filing No. 176.  Plaintiff, who is pro se, filed a motion in opposition to the summary judgment.  Filing No. 180.  Further, defendant filed a motion to strike, Filing No. 192, plaintiff's response, Filing No. 189, or in the alternative to submit objections.   Plaintiff filed this action alleging employment discrimination in violation of 42 U.S.C. § 2000e *et seq.* on the basis of sexual harassment, retaliation and constructive discharge.  Plaintiff filed her claim with the Equal Opportunity Commission and the Nebraska Equal Opportunity Commission who found no just cause.  The court has carefully reviewed the motion, briefs, evidence and the relevant law and concludes the motion for summary judgment should be granted.

**STANDARD OF REVIEW**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.,* *409 F.3d 984, 990 (8th Cir. 2005).*  The plain language of Rule 56(c) mandates the entry

of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). On a motion for summary judgment, the "'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Id.* (quoting *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009)).

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id.* The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586–87 (1986)).  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  *Id.*

There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial.  *Torgerson*, 643 F.3d at 1043 (quoting *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)).  Nevertheless, "[a]t the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).  The court's function is to determine whether a dispute about a material fact is genuine, that is, whether a reasonable jury could return a verdict for the nonmoving party based on the evidence.  *Id.* at 248.  To be material, a fact "must affect the outcome of the lawsuit under governing law."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's favor]."  *Id.* at 255.  "If reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate.  *Id.* at 250.  In a discrimination case, when the record on summary judgment is fully developed, the "court need only decide whether, on the record as a whole, there is a genuine issue for trial on the ultimate question of discrimination *vel non*."  *Torgerson*, 643 F.3d at 1054 (Colloton, J., concurring).

Pro se complaints are to be liberally construed, but must still allege sufficient facts to support claims advanced.  *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

3

## BACKGROUND

Plaintiff worked at the Tyson Food packing plant from May of 2009 until September 8, 2010, as a "trim outside skirt" on processing line 941.  She worked the second shift, from 3 p.m. until 11:45 p.m., Monday through Friday.  Her job consisted of receiving a piece of meat from the person next to her, taking the fat off the meat, and cutting it into a specific shape.  She then placed that cut of meat on the conveyor belt.  Production supervisors, those in yellow hats, supervised these employees.

In September of 2010, her production supervisors included Aurelio Barrios and Elida Rodriquez.  Supervisors on duty observed and corrected employees on the line and granted requests for bathroom breaks.  Bill Hoisington, the plant superintendent for plaintiff's shift, wore a green hat and had more authority than did the yellow hats.  Mark Sarratt served as the plant manager and was a step higher than Hoisington.  Suzann Reynolds served as the human resources manager and received and investigated employee complaints, and her assistant, Lupita Medrano, likewise investigated complaints, including discrimination and harassment claims.  Tyson has a discrimination policy.  Further, all employees receive training and are given information about how to address discrimination and harassment issues.  The employees also receive a hotline number.  Plaintiff admits she received this training and orientation.  *See* Filing No. 178, Attachments, 1-3; Filing No. 179, Attachments, 1-5.  In addition, defendant posts the reporting process and phone numbers for all employees to see.  Supervisors also receive additional training each year regarding harassment, discrimination and retaliation.

All of plaintiff's claims of discrimination and retaliation relate to her immediate line supervisor, Barrios.  Plaintiff states that Barrios began harassing her from the first day of her employment.  He allegedly invited her out, talked about going to dinner and eating tacos, told her she was pretty and had nice teeth, asked her to spend the night with him, and licked and bit his lip.  Also, plaintiff contends Barrios untied her apron on several occasions and grabbed her bottom and touched her back and shoulders.

On or about September 1, 2010, Barrios told plaintiff she was not rotating the meat correctly.  Two weeks prior, Barrios counseled plaintiff as well as other line employees that they were not rotating the meat as trained.  Plaintiff began crying on September 1 and yelling at Barrios.  Barrios told plaintiff to go to Hoisington's office to discuss the problem, but instead, she went to the personnel office.  Medrano saw her crying and took her to the nurse's station.  Plaintiff then went to Medrano's office to discuss her complaint, and then went back to work but knew if anything else happened she could talk to Medrano, Hoisington, or call the hotline.  After her shift, Medrano had plaintiff write up her statement.  Medrano stated there would be an investigation.

The next day plaintiff called the hotline before she went to work and reiterated her complaint.  She indicated to the hotline operator that Barrios acted in the same manner towards other women.  A hotline operator called plaintiff back and asked for more information so she could conduct a more thorough investigation.  Plaintiff did not provide any additional details, names or witnesses to the hotline operators.

Plaintiff worked the next two days, Thursday and Friday, and Monday was Labor Day.  Plaintiff indicated that no harassing behavior occurred on those days.  She did state that Barrios stood close to her, looked at her, and yelled at her about her duties.

5

No employees witnessed these behaviors, however.  Plaintiff did not report any of these alleged incidents to her supervisors.  On Tuesday she returned to work and contends Barrios again yelled at her about her work and scolded her for asking another supervisor if she could go to the bathroom, rather than asking him.  Also, on Tuesday, Medrano met with Reynolds, the Human Resources manager, to discuss plaintiff's complaint.  Plaintiff called the hotline operator again on Wednesday, September 8.  The operator asked plaintiff for more information.  Plaintiff did not provide any additional information.

Plaintiff decided her complaint would not be investigated and gave her notice of resignation on September 8.  Medrano asked plaintiff to reconsider and not resign, and Medrano said they would attempt to see if plaintiff could be moved.  Plaintiff agreed she would be open to this.   On September 7, Medrano conferred with Reynolds and concluded plaintiff should be moved.  On that same day Medrano spoke with Hoisington regarding a new position.  Hoisington approved the change and agreed to find an available position.  However, plaintiff did not show up for work on September 9 or 10.

On September 10, plaintiff spoke to Mark Sarratt about her complaint.  He told plaintiff that her complaint would be investigated and that information would be forthcoming within a few days.  Later that day, Medrano called plaintiff and offered her a comparable position on a different line away from Barrios.  Plaintiff did not take the position.  Plaintiff did not return to work again.

Defendant Tyson investigated plaintiff's complaint.  See Filing No. 178, Ex. 6; Filing No. 179-7 (Human Resources Report of Complaint).  This was the first complaint lodged against Barrios.  Medrano substantiated parts of plaintiff's complaint.  Medrano

interviewed the two alleged witnesses who witnessed some but not most of the behavior. Medrano also interviewed five other women. Barrios received a written warning of disciplinary action and warned that further conduct would result in additional discipline including discharge. Filing No. 178, Ex. A; Filing No. 179, Attach. 1- Ex. A. He also went through a retraining program.

## DISCUSSION

### A.  Sexual Harassment

A hostile work environment requires proof of the following elements:  "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment." *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 683 (8th Cir. 2012). The court finds plaintiff is female, and for purposes of this motion for summary judgment, the court finds Barrios harassed plaintiff on the basis of her gender. Although the fourth element is arguably not supported by the evidence, the court will assume for purposes of this motion that plaintiff has established a prima facie case of harassment which affected some condition of her employment.

Defendant argues, and the court agrees, it is clear defendant took corrective action and is entitled to the *Ellerth-Faragher* affirmative defense. "The *Ellerth-Faragher* affirmative defense consists of two necessary elements:  (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (b) that the plaintiff employee unreasonably failed to take advantage of

7

any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Weger v. City of Ladue,* 500 F.3d 710, 718 (8th Cir. 2007).

First, defendant contends it had a harassment policy which the court may view as proof it took reasonable care to prevent and correct any harassing behaviors. *Crawford v. BNSF Ry. Co.*, 665 F.3d 978, 983 (8th Cir. 2012) (affirming summary judgment on claims for sexual and racial harassment by supervisor). The court agrees. Defendant had a harassment policy, plaintiff understood and knew about the policy, the supervisors received training and retraining on the discrimination and harassment policies, there were multiple avenues for plaintiff to report the harassment, and defendant had persons who investigated any allegations of harassment. Thus, the court determines that the defendant exercised reasonable care to prevent harassing behavior.

The court now concludes that the plaintiff did not take advantage of the opportunities given to her by the defendant. Plaintiff waited 16 months after she contends the sexual harassment began until she first reported it to the defendant. "A showing that an employee failed to avail him-or herself of a proper complaint procedure 'will normally suffice to satisfy the employer's burden under the second element of the defense.'" *Adams v. O'Reilly Automotive, Inc.*, 538 F.3d 926, 932 (8th Cir. 2008) (citing to *Faragher v. City of Boca Raton*, 118 S. Ct. 2275 (1998)). In this case the employer acted quickly. Medrano told plaintiff to come to her or Hoisington if any additional issues came up during the investigation. Plaintiff reported nothing else to her or to anyone else. Second, when plaintiff gave her resignation notice, Medrano asked her to remain and they would seek to place her elsewhere. Further, an investigation was

conducted and Barrios was disciplined and retrained.  The court finds the action was prompt and remedial.  *See Brenneman v. Famous Dave's of Am., Inc.*, 410 F. Supp. 2d 828, 842-3 (S.D. Iowa 2006) (holding, as a matter of law, employer's actions were sufficiently remedial where, on the basis of partially-admitted claims of supervisor harassment, supervisor was given additional training and issued written warning).  Accordingly, the court finds the defendant has established that plaintiff failed to take advantage of the opportunities offered to her by the defendant, and the motion for summary judgment as to sexual harassment is granted.

B*. Constructive Discharge*

The Eighth Circuit holds that to constitute a constructive discharge, the employer's actions must be conducted with the intention of causing the employee to resign.  *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir. 1981).  Further, it is not sufficient that she simply shows a violation of Title VII.  *Hutchins v. International Brotherhood of Teamsters,* 177 F.3d 1076, 1082 (8th Cir. 1999); *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir. 1998).  "Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job." *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999); *Kimzey v. Wal-mart Stores, Inc.,* 107 F.3d 568, 574 (8th Cir. 1997).  "The intent element is satisfied by a demonstration that quitting was a 'reasonably foreseeable consequence of the employers discriminatory actions.'" *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1159 (8th Cir. 1999) (*quoting Summit v. S-B Power Tool*, 121 F.3d 416, 421 (8th Cir. 1997)).  Further, an employee has an obligation to not assume the worst and act too quickly for purposes of determining whether she has been constructively

9

discharged. *Tork v. St. Luke's Hospital,* 181 F.3d 918, 920 (8th Cir. 1999). Minor changes in duties or working conditions do not constitute grounds for a constructive discharge claim. *Kerns v. Capital Graphics, Inc.,* 178 F.3d 1011, 1016-17 (8th Cir. 1999); *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir. 1994). However, actions amounting to a constructive discharge constitute adverse employment actions for purposes of Title VII. *Kerns,* 178 F.3d at 1016 (*citing Parrish v. Immanual Med. Ctr.,* 92 F.3d 727, 732 (8th Cir. 1996)).

To the extent plaintiff argues that defendant constructively discharged her, the court likewise finds that claim lacks merit. The defendant did not terminate or discharge the plaintiff, nor did anyone discipline the plaintiff. Plaintiff submits no evidence that the defendant "must have intended to force [the employee] to quit or at least have reasonably foreseen [the employee's] resignation as a consequence of the working conditions." *Duncan v. General Motors Corp.,* 300 F.3d 928, 935 (8th Cir. 2002). Further, "[a]n employee who quits without giving her employer a reasonable chance to work out a problem has not been constructively discharged." *Duncan,* 300 F.3d at 935. Accordingly, the court finds there is no evidence to submit to the trier of fact on the issue of constructive discharge.

### C. Retaliation

Title VII provides that it shall be an unlawful employment practice for any employer to retaliate against an employee or an applicant for employment "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (1994).

"To establish a prima facie case of retaliation, an employee must show that [s]he engaged in protected activity; [s]he suffered a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination; and there is a causal connection between the protected activity and the adverse action." *Gibson v. American Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012). If the plaintiff makes this showing, the employer must then rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 856-57. If the employer does this, the burden of production shifts back to the plaintiff to demonstrate that the employer's nondiscriminatory reason is pretextual. *Id.* .

Plaintiff has submitted no evidence of an adverse action. On the contrary, the evidence stated above shows the opposite. She did not receive disciplinary action, she was not discharged, and the evidence shows that Barrios treated her the same as other employees with regard to her proper rotation and cutting the meat pieces. Further, defendant offered plaintiff a new job position away from her harasser. The court has already determined that defendant did not constructively discharge plaintiff. Accordingly, the court finds there is no evidence of an adverse employment action or of any retaliation that could be submitted to a jury, and thus this claim fails. *See, e.g.*, *Jackman v. Fifth Judicial Dist. Dep't of Correctional Servs.*, 728 F.3d 800, 805 (8th Cir. 2013) (holding plaintiff "did not establish a prima facie case of sex and race discrimination or retaliation because she cannot show, as a matter of law, that she suffered an adverse employment action.").

Defendant filed a motion to strike, Filing No. 192, plaintiff's response, Filing No. 189, to defendant's reply brief.  The court has reviewed the motion, brief and plaintiff's response.  The court agrees in part that plaintiff failed to follow the local rules in terms of requesting permission to file additional evidence and that the arguments are not responsive.  Further, the court has reviewed the proposed evidence and determines it is in many cases duplicative of previous evidence, is not responsive to the issues in the case, and is not relevant in many instances.  More importantly, even if the court admits the evidence, it will not change the outcome of the decision in this case.

THEREFORE, IT IS ORDERED:

1.  Defendant's motion for summary judgment, Filing No. 176, is granted, and this case is dismissed.

2.  Plaintiff's opposition to the summary judgment motion, Filing No. 180, is overruled.

3.  Defendant's motion to strike, Filing No. 192, is granted in part and denied in part as set forth herein.

4.  A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 25th day of March, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.